JON M. SANDS
Federal Public Defender
DANIEL L. KAPLAN AZ Bar #021158
Assistant Federal Public Defender
250 North 7th Avenue, Suite 600
Phoenix, Arizona 85007
(602) 382-2700
dan_kaplan@fd.org
*Attorney for Defendant*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| United States of America, | No. CV-25-02165-PHX-SPL (DMF) |
| Plaintiff, | |
| v. | **Response to Motion for** **Temporary Restraining Order** |
| Mehrad Asadieidivand, | |
| Defendant. | |

Defendant Mehrad Asadieidivand, by and through undersigned counsel, pursuant to this Court's Order of June 23, 2025 (Doc. 5), hereby responds to the government's Motion for Temporary Restraining Order (Doc. 4).

I.      **Introduction**

Mehrad Asadieidivand is seeking asylum in this country because, as a convert to Christianity, he faced abuse and threats in his home country of Iran. While in this country, he has been permitted to remain out of custody for years as his asylum case has proceeded—and during this time he has complied with all of the conditions of his release and been a law-abiding and productive resident of this nation. On May 31, 2025, however, for reasons that remain unclear to him, he was taken into immigration custody, where he has remained ever since.

Frustrated and desperate at his Kafkaesque situation, Mr. Asadieidivand began a hunger strike on June 6, 2025. (*United States v. Asadieidivand*, No. CV-25-02011-PHX-

SPL, Doc. 6 at 1.) On June 10, 2025, the government filed a complaint for injunctive relief, seeking a temporary restraining order (TRO) authorizing its agents to force-feed him. (*Id*. Doc. 1, 5.) The Court entered the TRO. (*Id*. Doc. 6.) On June 12, 2025, Mr. Asadieidivand resumed eating (*id*. Doc. 10 at 1), and on June 16, 2025, the government noticed its voluntary dismissal of the case (*id*. Doc. 11). The Court dismissed the case the following day. (*Id*. Doc. 12.)

On June 16, 2025, still in custody for no apparent reason and with no prospect of imminent release, Mr. Asadieidivand began a second hunger strike. (Doc. 1 at 3.) On June 23, 2025, the government once again filed a complaint for injunctive relief (Doc. 1), as well as a Motion for Temporary Restraining Order (Doc. 4), seeking a TRO authorizing its agents to force-feed Mr. Asadieidivand. (*Id*.) The Court entered a TRO on the same day, finding that "given Defendant's current condition, immediate and irreparable injury is likely to occur before Defendant can be given notice and an opportunity to respond." (Doc. 5 at 2.) The TRO authorizes the government's agents to "perform involuntary medical monitoring" of Mr. Asadieidivand, "involuntarily hydrate, medicate, and/or provide nutrition" to him, and "restrain [him], if necessary, to accomplish these procedures." (*Id*. at 2–3.) The Order also (i) directed the government to file a status report by 5:00 p.m. on June 25, 2025, after which the Court would "contemplate setting a status hearing or a hearing regarding the continuation of this TRO or a potential preliminary injunction," (ii) appointed counsel pursuant to 18 U.S.C. § 3006A(a)(2)(B) to assist Mr. Asadieidivand in preparing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, (iii) directed Mr. Asadieidivand to respond to the Motion for TRO by Thursday June 26, 2025, and (iv) directed the government's counsel to facilitate contact between Mr. Asadieidivand and his counsel by 5:00 p.m. on June 24, 2025. (*Id*. at 3.)

On the afternoon of June 24, 2025, undersigned counsel spoke to Mr. Asadieidivand by phone. Later that day, undersigned counsel entered his appearance in

this case. (Doc. 8.) On the morning of June 25, 2025, undersigned counsel met with Mr. Asadieidivand in person.

Also on June 25, 2025, the government filed its status report. (Doc. 9.) In the report, the government acknowledges that on June 24, 2025, Mr. Asadieidivand resumed eating, drinking, and "complying with medical examinations." (*Id*. at 1.) By June 25, 2025, Mr. Asadieidivand had been "discontinued from continuous medical watch." (*Id*. at 2.) Despite these facts, the government is declining to voluntarily dismiss this action, as it did previously. Instead, it declared its intention to refrain from moving to dissolve the TRO until a doctor "determines that [Mr. Asadieidivand's] clinical condition is stable and releases him from hunger strike treatment." (*Id*.) The government asserts that, although he is eating and drinking, Mr. Asadieidivand has not "stated" that he is ending his hunger strike, and that he has indicated that he is eating and drinking "against his will." (*Id*.)

## II.    Argument

### A.    The Court should dissolve the Temporary Restraining Order.

Federal Rule of Civil Procedure 65(b) authorizes this Court to enter a TRO without written or oral notice to the adverse party "*only* if [] specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A) (emphasis added). The Court found that such circumstances were present when it entered the TRO (Doc. 5 at 2)—but these circumstances are no longer present. The government's status report confirms that Mr. Asadieidivand has ended his hunger strike, and that his medical condition has improved sufficiently for him to be "discontinued from continuous medical watch." (Doc. 9 at 2.) Moreover, undersigned counsel has entered his appearance, can be immediately notified—via the Court's electronic filing system, phone, and/or email—of any future motions for similar relief, and can ensure that Mr. Asadieidivand may promptly "be heard in opposition" to any such motion. Fed. R. Civ. P. 65(b)(1)(A).

3

This is not a situation in which the TRO procedure is necessary to prevent the defendant from permanently impairing the plaintiff's interests. *Cf.* 11A Mary Kay Kane *et al.*, *Fed. Prac. & Proc. Civ.* § 2951 (Westlaw, Section updated May 21, 2025) (noting that TRO may be necessary "when imminent destruction of [] disputed property, its removal beyond the confines of the state, or its sale to an innocent third party" are threatened). The only thing Mr. Asadieidivand could do to impair the government's ability to secure the relief it seeks is to resume voluntarily eating and drinking—and doing so would advance, rather than undermining, the government's underlying "interest[] in preserving the life of an immigration detainee." (Doc. 1 at 6.)

Contrary to the government's implication, neither Mr. Asadieidivand's alleged failure to "state" that he is ending his hunger strike, nor his alleged assertion that he is eating and drinking "against his will" (Doc. 9 at 2), demonstrate the sort of threat of "immediate and irreparable injury" that could justify the continuation of the TRO. Fed. R. Civ. P. 65(b). Mr. Asadieidivand is eating and drinking. Any statement that he might make, or decline to make, will not render the food and drink he consumes any less life-sustaining.

In short, because the essential justification for the TRO has evaporated, the Court should dissolve it.

**B.      The Court should either decline to grant preliminary injunctive relief or schedule briefing and a hearing on the matter.**

The government has not expressly sought a preliminary injunction. Because it is the job of the parties, and not the Court, to articulate claims for relief, *United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020), the Court should consider making plain that it will not grant preliminary injunctive relief without such a request being made and supported. Should the Court construe the government's pleadings as incorporating a request for a preliminary injunction, it should either deny such an injunction, or schedule briefing and a hearing on the matter.

It is plain on the existing record that a preliminary injunction should not issue. Such an injunction would presumably amount to a standing authorization for the government's agents to continue subjecting Mr. Asadieidivand to "involuntary medical monitoring," force-feeding, and, if necessary, physical restraint, while the injunction remains in effect. (Doc. 4 at 12.) Among other things, these measures would involve physically restraining Mr. Asadieidivand, removing fluids from his body, and forcing a nasogastric tube through his nose, throat, and esophagus into his stomach and pumping nutritional fluid in. (Doc. 4-1 at 6, 7.) Such measures would severely encroach upon Mr. Asadieidivand's constitutional rights to bodily integrity, *Cruzan by Cruzan v. Dir., Missouri Dept. of Health*, 497 U.S. 261, 288–89 (1990) (O'Connor, J., concurring); *Thor v. Superior Ct.*, 855 P.2d 375 (Cal. 1993); privacy, *Zant v. Prevatte*, 286 S.E.2d 715, 717 (Ga. 1982); freedom from unlawful punishment, *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); and peaceful protest, *Stefanoff v. Hays Cnty., Tex.*, 154 F.3d 523, 527 (5th Cir. 1998).

These infringements upon Mr. Asadieidivand's fundamental rights would be unlawful even if he *were* presently engaged in a hunger strike. But he is not. Assuming, *arguendo*, that there may be circumstances in which the government's asserted interests in preserving Mr. Asadieidivand's life and the "good order" of the detention center (Doc. 4 at 5) could justify these infringements, the government should be required to articulate—and the Court to find—the existence of such circumstances in a particularized manner before they are authorized. The Court should not grant the government a durable carte blanche to subject Mr. Asadieidivand to these infringements whenever it sees fit, with no finding by the Court that the particular, contemporary circumstances justify them.

For these reasons, it is clear on the existing record that a preliminary injunction should not be entered. If, however, the Court believes that there is a question as to whether a preliminary injunction should issue, Mr. Asadieidivand respectfully suggests that the Court schedule briefing and a hearing on the question.

5

**Conclusion**

For the reasons set forth above, the Court should dissolve the TRO and either make plain that it does not intend to enter a preliminary injunction, or schedule briefing and a hearing on the matter.

Respectfully submitted:        June 26, 2025

JON M. SANDS
Federal Public Defender

*s/Daniel L. Kaplan*
DANIEL L. KAPLAN
Assistant Federal Public Defender
*Attorney for Defendant Asadieidivand*

6